**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**CHARLES BROWN, MARNIE BROWN,**
**COURTNEY WELLS, AUSTIN WELLS, B.B.,**
**a minor, by and through his mother and father**
**and next friends, Charles Brown and Marnie Brown;**
**and G.B., a minor, by and through his mother and**
**father and next friends, Charles and Marnie Brown**                    **PLAINTIFFS**

v.                                                      **CIVIL ACTION NO. 3:14cv197DPJ-FKB**

**FORD MOTOR COMPANY , XYZ**
**Corporations 1-10**                                                    **DEFENDANTS**

**FORD MOTOR COMPANY'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO EXCLUDE THE OPINIONS OF STAN SMITH**

## INTRODUCTION

Plaintiffs designated Stan Smith, a professional counselor, to testify that the fire at issue caused them numerous psychological conditions. He is not qualified to do so: this Court, the Northern District, and other courts within the Fifth Circuit have held that only licensed psychologists are qualified to opine on psychological conditions and their cause. Dr. Smith has no such license – indeed, the licensing board has ordered him to cease and desist offering mental health opinions. Further, even if Dr. Smith had appropriate qualifications, his opinions are not reliable, because he did not consider sufficient data, and he ignored data when expedient.

## FACTS

The fire at issue occurred late in the evening on May 11, 2011, or early the next morning. Afterward, Marnie and Charles Brown continued receiving treatment for psychological conditions that predated the fire, but none of the other Plaintiffs sought immediate treatment.

JM DSK01 1362734 v7
2824774-000677  01/30/2015

Near the eve of their expert disclosure deadline, Plaintiffs retained Dr. Smith to testify – not to provide treatment. Exhibit "A", Excerpts of Dr. Smith's Deposition at 22:15-24. Dr. Smith is not a licensed psychologist. *Id.* at 18:16-18.

In late November 2014, he had each of the Plaintiffs[1] take written questionnaires. *Id.* at 31:13-32:16. He also conducted two sets of video interviews. The first set of interviews occurred in November. *Id.* at 32:22-33:10. On November 20, 2014, Dr. Smith disclosed his opinions in a written report. On or around December 4, 2014, after Ford had requested the supportive data and materials referenced in his report at least twice – and two weeks after he provided his report – Dr. Smith began a second set of video interviews, one for each Plaintiff. The last of these video interviews did not occur until December 12. Dr. Smith did not send Ford any of his written materials until that same day, and he did not send Ford any of his videos until December 18.

Ford deposed Dr. Smith on December 22, 2014, and on January 15, 2015, it filed a Motion to Strike the new opinions he offered during that deposition. [Dkt. No. 79].

## ARGUMENT

Abundant case law demonstrates that Dr. Smith is not qualified to diagnosis Plaintiffs' mental health, or to opine whether the fire caused any alleged mental health infirmities. Further, even if he had proper qualifications, Dr. Smith's methodology in this case is unreliable, rendering his opinions inadmissible.

## I.     Dr. Smith Is Not Qualified to Offer His Opinions.

In his report, Dr. Smith purports to diagnose each of the Plaintiffs with a variety of psychological conditions. In particular, he contends that Marnie Brown, G.B., and B.B., all

---

[1] G.B. and B.B. did not take any of these tests themselves. Marnie Brown took them on their behalf.

2

suffer from "Trauma, Post-traumatic Stress Disorder, and Behavioral Neurol-Executive Brain Function Dysfunction." Exhibit "B", Dr. Smith's Report at 2. He further contends that Courtney Wells "suffers from Trauma and Post-traumatic Stress Disorder", that Charles Brown "suffers from Trauma Post-traumatic Stress Disorder, and Sexual Function Disorder", and that Austin Wells "suffers from Trauma, Generalized Anxiety Disorder, and Depressive Disorder." *Id.* at 2-3.

Dr. Smith, however, is not qualified to diagnose any of those conditions or determine that the alleged conditions are related to the fire, because he is not a licensed psychologist. Exhibit "A", Excerpts of Dr. Smith's Deposition, at 18:16-18. Indeed, this Court, the Northern District, and other district courts within the Fifth Circuit have all held that a psychology license is required to "diagnose [a] Plaintiff's psychological injuries and establish the casual relationship between those injuries and the alleged [tort]." *Wu v. Miss. State Univ.*, No. 1:13–CV–00002–DMB–DAS, 2014 WL 5799972 at*14-*16 (N.D. Miss. Nov. 7, 2014); *see also Previto v. Ryobi N. Am., Inc.*, 766 F. Supp. 2d 759, 769 (S.D. Miss. 2010); *Naquin v. Elevating Boats, LLC*, No. 10–4320, 2012 WL 1664257 at *7 (E.D. La. 2012). Dr. Smith's professional counseling license does not alter the rule. *Hall v. United Ins. Co.*, 367 F. 3d 1255, 1261 (11th Cir. 2004) (licensed professional counselor not competent to render mental health opinions); *Jackson v. Bayou Industries*, No. 94–946, 1995 WL 143538 at * 1 (E.D. La. 1995) (same).

The Court need not rely solely on this wealth of persuasive authority. More than a year ago, the Mississippi Board of Psychology prohibited Dr. Smith from rendering the types of opinions he intends to offer here. Exhibit "C", August 12, 2013 Letter from Mississippi Board of Psychology to Dr. Smith. According to the Board, Dr. Smith not only lacks the license

necessary to render his opinions in this civil action – he is *violating Mississippi law* by rendering them.

The case law from within this Circuit and the Mississippi Board of Psychology's cease-and-desist letter to Dr. Smith make plain that he is neither qualified to diagnose Plaintiffs' supposed conditions, nor qualified to establish that those supposed conditions relate to the fire. His opinions should be excluded.

## II.     Dr. Smith's Opinions Are Not Reliable.

Even if it is assumed that Dr. Smith has sufficient qualifications to render his opinions (again, he does not), his opinions must be excluded because they are not reliable. Dr. Smith used three types of measures – all obtained from Plaintiffs – to develop his opinions. First, he gave each Plaintiff questionnaires. Exhibit "A", Excerpts of Stan Smith's Deposition at 31:13-32:16. Second, he conducted a video interview of each Plaintiff in November. *Id.* at 32:22-33:10. Third, he conducted a video interview of each Plaintiff in December, after he had issued his report. *Id.* As Ford has explained in separate briefing, these December interviews are untimely and Dr. Smith should not be permitted to rely on them or testify about them. [Dkt. No. 79]. Even if the untimely interviews are considered, however, Dr. Smith's opinions are unreliable.

First, Dr. Smith relied wholly on Plaintiffs' self-reporting, even though they are trying to recover money damages that could increase with exaggeration. Second, during his December interviews, Dr. Smith used a cross-examination, suggestive style of questioning that is not peer-reviewed. Third, Dr. Smith's own data demonstrates that Marnie Brown – who reported G.B.'s and B.B.'s symptoms in addition to her own – was exaggerating and over-reporting. Fourth, Dr. Smith's data demonstrates that neither Charles Brown nor Courtney Wells have PTSD.

JM DSK01 1362734 v7
2824774-000677  01/30/2015

### A. Dr. Smith's Reliance on Self-Reporting Renders His Opinions Unreliable.

When rendering psychological opinions, an expert must avoid "a superficial analysis based on an incomplete medical and psychological history[.]" *North v. Ford Motor Co.*, 505 F. Supp. 2d. 1113, 1119 (D. Utah 2007). Dr. Smith, however, performed precisely that type of superficial analysis.

First, Dr. Smith did not interview any unbiased informants without a stake in this litigation. Instead, he interviewed only the Plaintiffs. Exhibit "A", Excerpts of Dr. Smith's Deposition, at 156:8-13; 198:17-21. Dr. Smith's decision to so limit his universe of informants renders his opinions unreliable and inadmissible. *Ilyia v. El-Khoury*, No. C11–01593RSL, 2013 WL 5441356 at *2 (excluding expert who interviewed only limited informants and noting with approval that psychologist who had been permitted to testify in another case, *inter alia*, "considered the declarations of others."); *see also North*, 505 F. Supp. 2d at 1119, Exhibit "D", Dr. Lott's Report at 4-5 (Forensic examiners must account for "a greater need for accuracy, [and] differences in response style between persons in therapeutic and forensic evaluation contexts[,]" making "archival and third-party information . . . a ***mandatory*** component[.]") (emphasis added). It is common sense that Plaintiffs in litigation are more likely to exaggerate symptoms than individuals seeking treatment. Indeed, as explained later in this brief, that potentiality was realized, yet Dr. Smith still made no efforts to explore collateral sources or contact neutral informants.

Second, Dr. Smith did not review any prior medical history for Plaintiffs. In particular, he did not know – and therefore did not consider – that Charles and Marnie Brown had experienced many of their supposed symptoms prior to the fire. Exhibit "A", Excerpts of Stan Smith's Deposition at 28:25-29:9, 109:8-111:15; Exhibit "D", Dr. Lott's Expert Report at 5 (the

5

medical records "reveal a history of concerns with anxiety, depression, and sleep disturbance for Mrs. Brown and a history of chronic pain, migraines, anxiety, and sleep disturbance for Mr. Brown. Mr. Brown's medical records also revealed a history of sexual problems prior to the alleged trauma[.]") Moreover, although Dr. Smith knew that Marnie Brown's father sexually abused her as a child, he failed to adequately investigate the impact that abuse had on Ms. Brown. According to Dr. Smith, he did not deem extensive questioning and investigation on this tragic topic necessary, because he "wasn't doing a forensic [evaluation] that involved sexual abuse allegations[.]" Exhibit "A", Excerpts of Dr. Smith's Deposition at 128:17-129:7. In other words, Dr. Smith did not believe the issue relevant because 1) Plaintiffs' counsel did not specifically *ask* him to evaluate it, and 2) **Ms. Brown** contends that the sexual abuse did not cause her any harm. *Id.* at 130:12-131:18.[2] Accordingly, he did not verify Ms. Brown's claimed lack of emotional impact with anyone else. *Id.*

As *North* makes clear, Dr. Smith was required to conduct "a complete medical and psychological history" before rendering his opinions. 505 F. Supp. 2d 1113, 1119. He did not meet this requirement. He obtained no medical records, he did not interview unbiased individuals regarding relevant symptoms, and he did not investigate other traumatic events. Just like the psychologist excluded in *North*, Dr. Smith's failure to address these salient topics renders his opinions unreliable.

Third, and finally, although Dr. Smith claims to have engaged in performance-based testing, the measures he identified were not performance-based. Exhibit "D", Report of Criss Lott at 6 ("When asked . . . if he conducted any performance-based testing, Dr. Smith

---

[2] In at least one other cause, Dr. Smith had a very different view on the impact a sexual assault can have: he opined that childhood sexual abuse caused someone to commit murder. Exhibit "A", Excerpts of Dr. Smith's Deposition at 133:9-13.

commented that he had the examinee read parts of questionnaires to him . . . This *in no way* represents a performance-based test.") (emphasis added).

Dr. Smith conducted a superficial analysis based solely on what Plaintiffs told him. He did not interview any neutral third parties, he did not review any prior medical history, and he did conduct any performance-based testing. Dr. Smith did nothing more than affirm Plaintiffs' self-diagnoses, meaning his opinions are not reliable and should be excluded.

### B. Dr. Smith's Interviewing Method is Not Reliable.

Dr. Smith has admitted that the video interviews he conducted in December are essential to his opinions. Exhibit "A", Excerpts of Dr. Smith's Deposition at 33:7-17. However, those interviews are not reliable, because he engaged in suggestive, leading questioning throughout them. *Id.* at 34:9-19. That is, he informed each Plaintiff that he was reading symptoms necessary for a PTSD diagnosis, then asked whether they had those symptoms. *Id.* As Dr. Lott explained, this method of questioning "influenc[ed] and contaminat[ed] his [Dr. Smith's] findings . . . this procedure [was] inappropriate and . . . essentially contaminat[ed] any future evaluations . . . of these individuals." Dr. Criss Lott's Report at 8. It is therefore unsurprising that Dr. Smith could not state that his questioning method has been peer-reviewed. Exhibit "A", Excerpts of Dr. Smith's Deposition at 34:1-35:13. Because his method has not been peer-reviewed and is otherwise unreliable, it should be excluded. *E.g., Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009); *Jack Henry & Assocs., Inc. v. BSC, Inc.*, 487 Fed. App'x. 246, 256-57 (6th Cir. 2012) (affirming district court's exclusion of expert whose methodology had not been peer-reviewed); *Sumner v. Biomet, Inc.*, 434 Fed App'x 834, 843 (11th Cir. 2011) (affirming district court's exclusion of expert who could not "identify any publications or scientific studies" that supported his methodology). Indeed, *Paz* is directly on

7

point: there, as here, the supposed medical professional could not demonstrate that the method supporting her diagnoses were peer-reviewed. 555 F.3d at 389.

### C. Marnie Brown's Over-Reporting and Exaggeration Invalidate Dr. Smith's Diagnoses for Marnie Brown, G.B., and B.B.

According to Dr. Smith, Marnie Brown, G.B., and B.B. all suffer from PTSD and "neurol-executive brain function dysfunction." The latter is not a diagnosis, Exhibit "A" Excerpts of Dr. Smith's Deposition at 118:23-119:19, and Dr. Smith's untimely attempt to provide a diagnosis during his deposition should be excluded. [Dkt. No. 79]. Even setting that issue aside, however, Dr. Smith's diagnoses for these Plaintiffs remains inadmissible, because they depend on Marnie Brown's over-reporting and exaggeration.

Dr. Smith's data demonstrates that Marnie Brown is "over-reporting" and "exaggerat[ing]" symptoms. Exhibit "A", Excerpts of Dr. Smith's Deposition at 143:20-144:10. The potential for precisely this type of over-reporting and exaggeration is one reason that collateral sources of information are essential for a forensic examiner. Exhibit "D", Dr. Lott's Expert Report, at 4. However, as explained in Section II-A of this brief, Dr. Smith did not utilize any collateral sources. Further, although Dr. Smith identified data that he claimed disproved Marnie Brown's exaggeration and over-reporting, the data he specified assessed only whether Ms. Brown was *under*-reporting – not whether she was *over*-reporting. Exhibit "D", Report of Criss Lott, at 6 ("Dr. Smith noted that the 'K-r' scale was within normal limits. The K-r scale assesses the degree to which an individual is under-reporting psychological responses – which was not the case in this evaluation.") (internal quotation marks in original).

Marnie Brown's over-reporting and exaggeration also permeates and contaminates Dr. Smith's assessment of G.B. and B.B. She was the primary reporter on behalf of both minors – she filled out their written questionnaires, and she answered questions for them during

8

Dr. Smith's December interviews. Exhibit "A", Excerpts of Dr. Smith's Deposition at 175:23-177:24; 191:1-16; 197:18-198:21; 200:14-21.[3]

When Dr. Smith evaluated Marnie Brown and her two minor children, she over-reported and exaggerated their symptoms. Dr. Smith did not nothing to account for this over-reporting and exaggeration, so his opinions relating to Marnie Brown, G.B., and B.B. are not reliable.

### D. Dr. Smith's PTSD Data Refutes His Opinions Relating to Charles Brown and Courtney Wells.

As explained in the preceding section, Dr. Smith essentially ignored data generated in *his* office that shows Marnie Brown is over-reporting and exaggerating. That, however, is not the only data that he ignores. In particular, Dr. Smith ignored data generated from Courtney Wells' and Charles Brown's PTSD questionnaires. Indeed, the reports generated from those questionnaires unequivocally state that neither Courtney Wells nor Charles Brown have PTSD.

| PTSD Diagnosis | YES | ■ NO | Incomplete Information |

*See also* Exhibit "E", Charles Brown's PTSD Profile Report at 2; Exhibit "F", Courtney Wells' PTSD Profile Report at 2. Further, written findings follow these images, and they confirm that neither Charles Brown nor Courtney Wells have PTSD. With respect to Charles Brown, the written findings state that "his symptom pattern is not consistent with a *DSM-IV* diagnosis of PTSD." Exhibit "E", Charles Brown's PTSD Profile Report at 3 (italics in original) Likewise, the written findings regarding Courtney Wells state that "her symptom pattern is not consistent

---

[3] Dr. Smith had Marnie Brown answer on behalf of the minors based solely on Charles Brown's request. *Id.* at 215:21-216:5.

JM DSK01 1362734 v7
2824774-000677  01/30/2015

with a *DSM-IV* diagnosis of PTSD." Exhibit "F", Courtney Wells' PTSD Profile Report at 3 (italics in original).

## CONCLUSION

Abundant case law demonstrates that a psychology license is required to render psychological opinions, and the Mississippi Board of Psychology has demanded that Dr. Smith, who has no such license, cease and desist offering psychological opinions. In legal principle and in practical application, Dr. Smith is not qualified to offer his psychological opinions in this case.

Dr. Smith's lack of qualifications is further proven by his unreliable, unscientific methodology. Dr. Smith's opinions rely wholly on self-report measures Plaintiffs provided during litigation, on the eve of their expert disclosure deadline. Further, Dr. Smith obtained at least some of his data with leading, suggestive questions. Finally, when Dr. Smith's data suggested that his opinions were incorrect, he ignored that data.

Dr. Smith is not qualified to offer his opinions, and his opinions are not reliable. He should be excluded.

This the 30th day of January, 2015.

                                            Respectfully submitted

                                            FORD MOTOR COMPANY
                                            By Its Attorneys,

                                            BAKER, DONELSON, BEARMAN,
                                            CALDWELL & BERKOWITZ, PC


                                            By: */s/ Sterling Kidd*
                                                D. Sterling Kidd

Robert F. Walker (MSB No. 100660)
rwalker@bakerdonelson.com
D. Sterling Kidd (MSB No. 103670)
skidd@bakerdonelson.com
BAKER, DONELSON, BEARMAN
CALDWELL & BERKOWITZ, PC
4268 I-55 North
Meadowbrook Office Park
P. O. Box 14167
Jackson, Mississippi 39236
Telephone:  (601) 351-2400
Facsimile:  (601) 351-2424
skidd@bakerdonelson.com

And

Scott A. Richman, Esq. (admitted PHV)
McDonald Toole Wiggins, P.A.
111 North Magnolia Avenue, Suite 1200
Orlando, Florida  32801
Srichman@mtwlegal.com

## CERTIFICATE OF SERVICE

I, Sterling Kidd, do hereby certify that on this date I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of the filing to all counsel who have registered with the system.

This 30th day of January, 2015.

                                                                    */s/Sterling Kidd*
                                                                       D. Sterling Kidd

JM DSK01 1362734 v7
2824774-000677  01/30/2015